**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA**                   SEP 21  PM 1:41
**EVANSVILLE DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| THE STATE OF INDIANA, | ) | **3 : 09 -cv- 0128 RLY -WGH** |
| | ) | |
| Plaintiffs, | ) | Civil Action No. |
| | ) | |
| v. | ) | Judge |
| | ) | |
| THE CITY OF EVANSVILLE, | ) | |
| INDIANA | ) | |
| Defendant | ) | |
| | ) | |

## COMPLAINT

The United States of America, by authority of the Attorney General of the United States,

and acting on behalf of the Administrator of the United States Environmental Protection Agency

("U.S. EPA"), and the State of Indiana (the "State"), by the authority of its Attorney General and

on behalf of the Indiana Department of Environmental Management ("IDEM"), allege as

follows:

### NATURE OF ACTION

1.      This is a civil action brought pursuant to Section 309(b) and (d) of the Clean

Water Act ("CWA"), 33 U.S.C. § 1319(b) and (d), for injunctive relief and for the assessment of

civil penalties against Defendant City of Evansville, Indiana ("Evansville" or "Defendant") for

unauthorized and illegal discharges of pollutants and other violations of Section 301(a) of the

CWA, 33 U.S.C. § 1311(a), and the National Pollutant Discharge Elimination System

("NPDES") permits that have been issued to it.  For many years, the Defendant has discharged

sewage and other harmful pollutants from the sewage collection systems that are part of its Publicly Owned Treatment Works ("POTW") onto public and private property and into navigable waters flowing through and around the City of Evansville, including but not limited to the Ohio River, Pigeon Creek, Bee Slough, and Carpentier Creek. These discharges are caused by the POTW's lack of capacity to convey wastewaters through its collection systems and fully treat those wastewaters at its two Waste Water Treatment Plants ("WWTPs") in its service area, and by poor maintenance and operation of the POTW. As a result, and as further alleged in this complaint, the Defendant violated several terms and conditions of the NPDES permits that have been issued to it, has violated Section 301(a) of the CWA, and has violated Indiana law.

## JURISDICTION, VENUE, AUTHORITY AND NOTICE

2.     This Court has jurisdiction over the subject matter of this action pursuant to Section 309(b) of the CWA, 33 U.S.C. § 1319(b) and 28 U.S.C. §§ 1331, 1345 and 1355. The State is a party to this action pursuant to Section 309(e) of the CWA, 33 U.S.C. § 1319(e), and 28 U.S.C. § 1367(a).

3.     This Court has supplemental jurisdiction over the State law claims alleged herein pursuant to 28 U.S.C. § 1367(a) because the State claims are related to the federal claims and form part of the same case or controversy.

4.     Venue is proper in the Southern District of Indiana pursuant to 28 U.S.C. § 1391(b), and Section 309(b) of the CWA, 33 U.S.C. § 1319(b), because it is the judicial district where Defendant is located and where the alleged violations occurred. Venue in this District is also proper under 28 U.S.C. § 1367(a).

5.     As a signatory to this Complaint, the State has actual notice of the commencement of this action in accordance with Section 309(b) of the CWA, 33 U.S.C. § 1319(b).

6.      The Attorney General of the United States is authorized to appear and represent the United States in this action pursuant to Section 506 of the CWA, 33 U.S.C. § 1366, and 28 U.S.C. §§ 516 and 519.

7.      The Indiana Attorney General is authorized to appear and represent the State in this action pursuant to Ind. Code §§ 4-6-3-2(a), 13-30-4-1 and 13-14-2-6.

**DEFENDANT**

8.      Defendant City of Evansville, Indiana, through the Evansville Water and Sewerage Utility ("EWSU"), owns and operates a POTW which consists of two WWTPs (the "East Plant" and the "West Plant") and wastewater collection systems for each WWTP.  The Evansville POTW serves the City of Evansville and portions of the surrounding area, in Vanderburgh County, Indiana.

9.      The City of Evansville (including EWSU) is a "person" within the meaning of Section 502(5) of the CWA, 33 U.S.C. § 1362(5), and Evansville is a "municipality" within the meaning of Section 502(4) of the CWA, 33 U.S.C. § 1362(4).

**JOINDER OF A NECESSARY PARTY**

10.      Section 309(e) of the CWA requires that a State be joined as a party when the United States sues a municipality of the State.  The State of Indiana is a co-plaintiff, along with the United States, in this action.  IDEM is authorized to implement the CWA within the State of Indiana.  Ind. Code § 13-13-5-1(1).  Indiana regulations incorporate the CWA by reference.  327 IAC 5-2-1.5(1).

**FEDERAL AND STATE STATUTES AND REGULATIONS**

11.      Section 301(a) of the CWA, 33 U.S.C. § 1311(a), and Ind. Code 13-30-2-1 prohibit the discharge of any pollutants by any person except, *inter alia,* in compliance with an

3

NPDES permit issued by U.S. EPA or an authorized state pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

12. Section 502(12) of the CWA defines "discharge of a pollutant" to mean, among other things, "any addition of any pollutant to navigable waters from any point source." 33 U.S.C. § 1362(12). *See also* 327 IAC 5-1.5-11 (similarly defining "discharge of a pollutant").

13. Section 502(7) of the CWA defines navigable waters to be "the waters of the United States, including the territorial seas." 33 U.S.C. § 1362(7). U.S. EPA regulations promulgated pursuant to the CWA define the term "waters of the United States" to include, among other things: 1) all waters which are currently used, were used in the past, or may be susceptible to use in interstate or foreign commerce, including all waters which are subject to the ebb and flow of the tide; 2) all interstate waters; 3) all other waters such as intrastate lakes, rivers and streams (including intermittent streams), the use, degradation, or destruction of which would affect or could affect interstate or foreign commerce; 4) tributaries of waters of the United States; and 5) certain wetlands (including wetlands adjacent to these waters). 40 C.F.R. § 122.2.

14. Indiana law defines "waters of the state" to include "the accumulations of water, surface and underground, natural and artificial, public and private; or . . . a part of the accumulations of water . . . that are wholly or partially within, flow through, or border upon Indiana." Ind. Code. 13-11-2-265.

15. Section 502(6) of the CWA and Indiana regulations define "pollutant" to include, *inter alia,* sewage. 33 U.S.C. § 1362(6); 327 IAC 5-1.5-41.

16. Federal regulations set forth a list of general conditions that all NPDES permits issued under State NPDES permitting programs must contain to meet Federal minimum standards. 40 C.F.R. § 122.41(e) sets forth the General Condition for "Proper Operation and Maintenance" of facilities and systems. Section 122.41(e) states that a "permittee shall at all

4

times properly operate and maintain all facilities and systems of treatment and control (and related appurtenances) which are installed or used by the permittee to achieve compliance with the conditions of [the] permit."

17.     The term "facility" is defined in the regulations as "any NPDES 'point source' or any other facility . . . (including land or appurtenances thereto) that is subject to regulation under the NPDES program." 40 C.F.R. §122.2.

18.     The term "point source" is defined in Section 502(14) of the CWA, 33 U.S.C. § 1362(14), as "any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel . . . from which pollutants are or may be discharged." *See also* 327 IAC 5-1.5-40.

19.     Section 402(a) of the CWA, 33 U.S.C. § 1342(a), provides that U.S. EPA may issue NPDES permits to "persons" that authorize the discharge of any pollutant to navigable waters, but only in compliance with Section 301 of the CWA, 33 U.S.C. § 1311, and such terms and conditions as U.S. EPA determines are necessary to carry out the provisions of the CWA. *See also* 327 IAC 5-2-2.

20.     Section 402(b) of the CWA, 33 U.S.C. § 1342(b), provides that a State may establish and administer its own permit program, and, after U.S. EPA authorizes its program, may issue NPDES permits. At all times relevant to this complaint, IDEM has been authorized by U.S. EPA to administer an NPDES permit program for regulating discharges of pollutants into navigable waters within its jurisdiction.   40 Fed. Reg. 4033 (Jan. 27, 1975).  IDEM administers the NPDES permitting program in Indiana pursuant to Ind. Code § 13-13-5-1(1) and maintains concurrent enforcement authority with U.S. EPA over NPDES permits in Indiana.  327 IAC 5-2-2 prohibits the discharge of pollutants to "waters of the state" except as authorized by a duly issued NPDES permit.

21.    Section 309(b) of the CWA, 33 U.S.C. § 1319(b), authorizes U.S. EPA to commence a civil action for appropriate relief, including a permanent or temporary injunction, when any person violates, among other things, Section 301 of the CWA, 33 U.S.C. § 1311, or violates any of the terms or conditions of an NPDES.  Indiana's water pollution control laws may be enforced under Ind. Code §§ 13-30-1-1, 13-30-3 or 13-14-1-12.

22.    Section 309(d) of the CWA, 33 U.S.C. § 1319(d), provides that any person who violates, among other things, Section 301 of the CWA, 33 U.S.C. § 1311, or who violates any condition or limitation of an NPDES permit issued pursuant to Section 402 of the CWA, 33 U.S.C. §1342, shall be subject to a civil penalty not to exceed $25,000 per day of violation, with each day in which a violation occurs constituting a separate violation.

23.    Pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. § 2461 note: Pub. L. 101-410, enacted October 5, 1990; 104 Stat. 890), as amended by the Debt Collection Improvements Act of 1996 (31 U.S.C. § 3701 note; Pub. L. 104-134, enacted April 26, 1996; 110 Stat. 1321), U.S. EPA promulgated the Civil Monetary Penalty Inflation Adjustment Rule.  Under that rule, U.S. EPA may seek civil penalties of up to $27,500 per day for each violation occurring after January 30, 1997, $32,500 per day for each violation occurring after March 15, 2004, and $37,500 per day for each violation occurring after January 12, 2009. *See* 61 Fed. Reg. 69,364 (Dec. 31, 1996); 69 Fed. Reg. 7,121 (Feb. 13, 2004); 73 Fed. Reg. 75,345 (Dec. 11, 2008).

24.    327 IAC 5-2-20 and Ind. Code §§ 13-30-4-1 and 13-14-2-6 authorize the State to commence a civil action for appropriate relief to address violations of Title 327 of the Indiana Administrative Code, Article 5, including injunctive relief and civil penalties.  Such relief may include a permanent or temporary injunction, as well as a civil penalty of up to $25,000 per day for each violation.

6

## GENERAL ALLEGATIONS

25.     Defendant owns and operates "treatment works" as that term is defined in CWA Section 212(2), 33 U.S.C. §1292(2), and a "publicly owned treatment works" as that term is defined in U.S. EPA regulations implementing the CWA, 40 C.F.R. § 122.2 (cross-referencing the definition at 40 C.F.R. § 403.3). Defendant's POTW consists of the two WWTPs (the East Plant and the West Plant) and the sewage collection systems for these plants.

26.     Defendant's POTW collects, conveys, treats and disposes of sanitary sewage from the City of Evansville and portions of Vanderburgh County, Indiana, an area covering approximately 9,600 square acres, with a service population of approximately 163,000 people.

27.     The East Plant has an average peak design flow of 24 million gallons per day ("MGD"), and the mass limits for Carbonaceous Biochemical Oxygen Demand ("CBOD5") and Total Suspended Solids ("TSS") in its NPDES permit for that plant are based on that average peak design flow.

28.     The West Plant has an average peak design flow of 28 MGD, and the mass limits for CBOD5 and TSS in the NPDES permit for that plant are based on that average peak design flow.

29.     Defendant has two collection systems, one at each WWTP, together that consist of approximately 750 miles of pipe that convey sewage and other pollutants to the East Plant and the West Plant. Each collection system includes both "combined sewers" (*i.e.,* the pipes carry both wastewater and stormwater in the same pipe) and "separate sewers" (*i.e.,* there are two sets of pipes, one for wastewater and the other for stormwater).

30.     The "combined" portions of each of the collection systems are in older areas of the City of Evansville, and the "separate" portions of the systems are in newer, more suburban

7

and rural areas surrounding the City. As a whole, combined sewers make up approximately 40% of both collection systems.

31.     The wastewater that Defendant conveys and/or stores in its collection systems, and the wastewater that Defendant treats and disposes of at its two WWTPs, contain "pollutants" as that term is defined in Section 502(6) of the CWA, 33 U.S.C. § 1362(6) and 327 IAC 5-1.5-41.

32.     On or about May 11, 1999, IDEM issued NPDES Permit No. IN0033073 to Defendant for the East Plant under the authority of Section 402 of the CWA, 33 U.S.C. § 1342 and Ind. Code § 13-13-5-1(1). The East Plant permit was reissued on September 18, 2006, and is currently scheduled to expire on October 31, 2011.

33.     On or about June 10, 1999, IDEM issued NPDES Permit No. IN0032956 to Defendant for the West Plant under the authority of Section 402 of the CWA, 33 U.S.C. § 1342, and Ind. Code § 13-13-5-1(1). The West Plant permit was reissued on August 2, 2006, and is currently scheduled to expire on August 31, 2011. The NPDES permits issued in 1999 for the East Plant and the West Plant are hereinafter referred to as the "1999 NPDES permits." The NPDES permits issued in 2006 for the East Plant and the West Plant are hereinafter referred to as the "2006 NPDES permits."

34.     The 1999 and 2006 NPDES permits that Defendant holds for its two WWTPs authorize the discharge of effluent only from specific outfalls identified in the permits and only in compliance with the conditions and limitations set forth in the permits.

35.     Part I.A. of Attachment A of Defendant's 1999 and 2006 NPDES permits authorize discharges from designated Combined Sewer Overflow ("CSO") outfalls during wet weather subject to the requirements and limitations of the permits.

36.     Part I.B. of Attachment A of each 2006 NPDES permit provides, among other things, that the discharge from any and all CSO outfalls shall not cause receiving waters to contain substances, materials, floating debris or other pollutants that: 1) will settle to form putrescent or otherwise objectionable deposits; 2) are in amounts sufficient to be unsightly or deleterious; or 3) produce color, odor, or other conditions in such a degree as to create a nuisance.  Defendant's 1999 NPDES permits contain similar prohibitions in Part I.A. of Attachment A to each of those permits.

37.     Part. I.C. of Attachment A of Defendant's 2006 NPDES permits prohibits "dry weather" discharges from the CSO outfalls.  Part I.B. of Attachment A to Defendant's 1999 NPDES permits contains a similar prohibition.

38.     Attachment A, Part III.A.4 and Part III.C. of Defendant's 2006 NPDES permits require Defendant to maximize treatable flow to the WWTPs during wet weather events so as to reduce the magnitude, frequency, and duration of CSO events.  Part III.B. of Attachment A to each of Defendant's 1999 NPDES Permits contains a similar requirement.

39.     Attachment B to each of Defendant's 1999 and 2006 NPDES permits prohibits "overflows in the sanitary sewer system or in a sanitary portion of a combined sewer system…from discharging at any time."

40.     Part II.B.1. of each of Defendant's 2006 NPDES permits requires Defendant to maintain in good working order and efficiently operate all facilities for collection and treatment that are necessary to achieve compliance with the terms and conditions of the NPDES permits.  This condition is the Indiana equivalent of 40 C.F.R. § 122.41(e), and is known as the "Proper Operation and Maintenance" condition.  Part II.B.1 of Defendant's 1999 NPDES permits imposes similar requirements.

41.     Part II.C.3 of Defendant's 2006 NPDES permits and Part I.C of Attachment A
and Attachment B to Defendant's 2006 NPDES permits require Defendant to orally report
discharges from the separate, sanitary portions of the collection system and the combined sewer
system within 24 hours, and in writing within 5 days, providing certain information concerning
the discharge, including but not limited to the cause of the discharge and remedial actions taken
to end the discharge. Part II.C.3 of Defendant's 1999 NPDES permits and Part I.B. of
Attachment A and Attachment B to Defendant's 1999 NPDES permits impose similar
requirements.

42.     Untreated sewage contains organic matter, bacteria and other potential pathogens,
which are harmful to human health and the environment, including but not limited to aquatic life.
The pathogens in raw sewage can cause a number of diseases in humans, including but not
limited to enteric diseases such as gastroenteritis, dysentery and cholera.

43.     Defendant's WWTP outfalls and CSO outfalls are located on the Ohio River, or
on Pigeon Creek or Bee Slough, which are tributaries of the Ohio River, all of which constitute
"navigable waters" of the United States within the meaning of Section 502(7) of the CWA, 33
U.S.C. § 1362(7), as well as "waters of the state" of Indiana as defined in Ind. Code § 13-11-2-
265.

44.     The currently-effective NPDES permits identify two Sanitary Sewer Overflow
("SSO") outfalls listed as discharging to an unnamed ditch to the Ohio River and to an unnamed
ditch to Carpentier Creek. Carpentier Creek is a "navigable water" of the United States within
the meaning of Section 502(7) of the CWA, 33 U.S.C. § 1362(7), as well as a "water of the state"
of Indiana as defined in Ind. Code § 13-11-2-265.

45.     The State of Indiana, under 327 IAC 2-1-3(a)(1), has designated the Indiana
portions of the Ohio River, Pigeon Creek, Carpentier Creek, and Bee Slough as "full body

10

contact recreation" waterbodies. Indiana regulations specify the water quality criteria that full body contact recreation waters must meet, including a requirement that these waters be free from "substances, materials, [and] floating debris" that are "unsightly or deleterious," and a requirement that full body contact recreation waters contain no more than 235 *E.coli* bacteria per 100 milliliters ("ml") of water in any one sample taken in a 30 day period. 327 IAC 2-1-6(a) and (d).

## **FIRST CLAIM FOR RELIEF**

### **(Combined Sewer Overflows - Prohibited Wet Weather Discharges)**

46.     Paragraphs 1 through 45 are realleged and incorporated herein by reference.

47.     On numerous occasions in the past, the Defendant discharged pollutants from designated CSO outfalls specified in Attachments A to Defendant's NPDES permits in amounts and quality that violated the terms and conditions of those permits, including Part I.B of Attachment A to the 2006 NPDES permits and Part I.A. to Attachment A to the 1999 NPDES permits, which provides, *inter alia*, that the discharge from any and all CSO outfalls shall not cause receiving waters to contain substances, materials, floating debris or other pollutants that, among other things:  1) will settle to form putrescent or otherwise objectionable deposits; 2) are in amounts sufficient to be unsightly or deleterious; or 3) produce color, odor, or other conditions in such a degree as to create a nuisance.

48.     Each of those discharges from designated CSO outfalls that violated the terms and conditions of Part I.B. of Attachment A to Defendant's 2006 NPDES permits and Part I.A. of Attachment A to Defendant's 1999 NPDES permits constitutes a separate violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a), for each discharge on each day from each CSO outfall.

49.     Each such discharge on each day constitutes a separate violation of Ind. Code § 13-30-2-1 and 327 IAC 5-2-2.

50.     Unless enjoined by the Court, the Defendant will continue to violate Section 301 of the CWA, 33 U.S.C. § 1311.

51.     Unless enjoined by the Court, the Defendant will continue to violate Ind. Code § 13-30-2-1 and 327 IAC 5-2-2.

52.     For each violation referred to in this claim, Defendant is subject to injunctive relief and civil penalties in the amounts as set forth in paragraphs 23-24, *supra.*

## SECOND CLAIM FOR RELIEF

### (Combined Sewer Overflows - Prohibited Dry Weather Discharges)

53.     Paragraphs 1 through 45 are realleged and incorporated herein by reference.

54.     On numerous occasions in the past, the Defendant discharged pollutants from the designated CSO outfalls specified in Attachment A to the NPDES permits during dry weather in violation of the prohibition against dry weather discharges contained in Attachment A, Part I.C. of the 2006 NPDES permits and Attachment A, Part I.B. of the 1999 NPDES permits.

55.     Each such dry weather discharge on each day from each location constitutes a separate violation of each 1999 and 2006 NPDES permit and a separate violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a).

56.     Each such dry weather discharge on each day from each location also constitutes a separate violation of Ind. Code § 13-30-2-1 and 327 IAC 5-2-2.

57.     Unless enjoined by the Court, Defendant will continue to violate Section 301 of the CWA, 33 U.S.C. § 1311.

58.     Unless enjoined by the Court, Defendant will continue to violate Ind. Code § 13-30-2-1 and 327 IAC 5-2-2.

59.     For each violation referred to in this claim, Defendant is subject to injunctive relief and civil penalties in the amounts as set forth in paragraphs 23-24, *supra.*

12

## THIRD CLAIM FOR RELIEF

### (Failure to Maximize Treatable Flow to the POTW)

60.     Paragraphs 1 through 45 are re-alleged and incorporated herein by reference.

61.     Defendant's 1999 and 2006 NPDES permits authorize wet weather discharges from CSO outfalls designated in the permits subject to the requirements of the permits, including Attachment A to each of the permits.

62.     Attachment A, Part III.A.4 and Part III.C. of Defendant's 2006 NPDES permits and Attachment A, Part III.B. of Defendant's 1999 NPDES permits require Defendant to maximize treatable flow to the WWTPs during wet weather events so as to reduce the magnitude, frequency, and duration of CSO events.

63.     On numerous occasions in the past, Defendant has discharged pollutants through CSO outfalls 103 and 123, immediately upstream of the East Plant and the West Plant, respectively, at times when Defendant failed to operate the WWTPs at maximum treatable flow during wet weather flow conditions and at times when Defendant failed to maximize the volume of flows transported to and through the WWTPs for treatment, in accordance with the peak hydraulic rating of each plant.

64.     Each discharge through a CSO outfall when Evansville failed to maximize treatable flow to the East Plant and the West Plant violates Part I.A of Attachment A to Defendant's 1999 and 2006 NPDES permits, and also violates Section 301(a) of the CWA, 33 U.S.C. § 1311(a).

65.     Each discharge through a CSO outfall when Evansville failed to maximize flow to the East Plant and the West Plant in violation of each 1999 and 2006 NPDES permit is a separate violation of Ind. Code § 13-30-2-1 and 327 IAC 5-2-2.

13

66.     Unless enjoined by an order of the Court, Defendant will continue to violate Section 301(a) of the CWA, 33 U.S.C. § 1311(a).

67.     Unless enjoined by an order of the Court, Defendant will continue to violate Ind. Code § 13-30-2-1 and 327 IAC 5-2-2.

68.     For each violation referred to in this claim, Defendant is subject to injunctive relief and civil penalties in the amounts as set forth in paragraphs 23-24, *supra.*

## FOURTH CLAIM FOR RELIEF

### (Violation of the "Proper Operation and Maintenance" Condition (Part II.B.1) in Defendant's NDPES Permits)

69.     Paragraphs 1 through 45 are re-alleged and incorporated herein by reference.

70.     On numerous occasions in the past, Defendant has failed to comply with the "Proper Operation and Maintenance" condition in Part II.B.1 of the 1999 and 2006 NPDES permits and such noncompliance has caused releases of raw sewage from sewer pipes, manholes, pump stations and other "facilities" in Defendant's collection systems onto public and private property, including but not limited to streets, storm drains, yards, parks, and into buildings, including residential dwellings and businesses, located in the City of Evansville and/or Vanderberg County, where persons have or may have come into contact with such sewage. Reports prepared by Evansville have identified as among the causes of sewage releases from the sewer collection systems, *inter alia*, breaks in sewer pipes and blockages in sewer pipes caused by grease and/or roots.  These sewage releases have resulted from inadequate operation and maintenance procedures.

71.     Raw sewage contains excessive levels of pollutants, including but not limited to *E.coli* bacteria and fecal coliform bacteria which, when released onto public and private property as described above, pose a threat to human health and the environment.

14

72.     Each failure by Defendant to comply with the "Proper Operation and Maintenance Condition" in Part II.B.1 of the 1999 and 2006 NPDES permits on each day is a violation of the permits and CWA Section 301, 33 U.S.C. § 1311(a).

73.     Each failure by Defendant to comply with the "Proper Operation and Maintenance Condition" in Part II.B.1 of the 1999 and 2006 NPDES permits on each day is a violation of Ind. Code § 13-30-2-1 and 327 IAC 5-2-2.

74.     Unless enjoined by an order of the Court, Defendant will continue to violate the "Proper Operation and Maintenance Condition" in Part II.B.1 of the 2006 NPDES permits and CWA Section 301, 33 U.S.C. § 1311(a).

75.     Unless enjoined by an order of the Court, Defendant will continue to violate the "Proper Operation and Maintenance Condition" in Part II.B.1 of the 2006 NPDES permits and, in doing so, will continue to violate Ind. Code § 13-30-2-1 and 327 IAC 5-2-2.

76.     For each violation referred to in this claim, Defendant is subject to injunctive relief and civil penalties in the amounts as set forth in paragraphs 23-24, *supra.*

### FIFTH CLAIM FOR RELIEF

**(Overflows from the Sanitary Sewer Collection System - Prohibited Discharges)**

77.     Paragraphs 1 through 45 are re-alleged and incorporated herein by reference.

78.     On numerous occasions in the past, Defendant has discharged sewage and other pollutants from point sources (including designed overflow points and points not designed to overflow) in the sanitary sewer systems, and/or sanitary portions of the combined sewer systems for the East Plant and the West Plant, to navigable waters of the United States and/or "waters of the state."

79.     Each such discharge of pollutants from Defendant's sanitary sewers to navigable waters of the United States on each day constitutes a separate violation of Attachment B to the

15

1999 and 2006 NPDES permits and is a separate violation of Section 301(a) of the CWA, 33

U.S.C. § 1311(a).

80.     Each such discharge of pollutants from Defendant's sanitary sewers to "waters of

the state" on each day is a separate violation of Ind. Code § 13-30-2-1 and 327 IAC 5-2-2.

81.     Unless enjoined by an order of the Court, Defendant will continue to discharge

pollutants from Defendant's sanitary sewers to navigable waters of the United States in violation

of the SSO prohibition in Attachment B of the 2006 NPDES permits, in violation of Section

301(a) of the CWA, 33 U.S.C. § 1311(a).

82.     Unless enjoined by an order of the Court, Defendant will continue to discharge

pollutants from Defendant's sanitary sewers to "waters of the state" in violation of the SSO

prohibition in Attachment B of the 2006 NPDES permits, in violation of Ind. Code § 13-30-2-1

and 327 IAC 5-2-2.

83.     For each violation referred to in this claim, Defendant is subject to injunctive

relief and civil penalties in the amounts as set forth in paragraphs 23-24, *supra.*

## SIXTH CLAIM FOR RELIEF

### (United States' Claim Under Emergency Powers Provision in Section 504(a) of the CWA)

84.     Paragraphs 1 through 45, 70, and 71 are re-alleged and incorporated herein by

reference.

85.     Section 504(a) of the CWA, 33 U.S.C. § 1364(a) states in pertinent part:

**Emergency Powers**

Notwithstanding any other provision of this chapter, the
Administrator upon receipt of evidence that a pollution source or
combination of sources is presenting an imminent and substantial
endangerment to the health of persons . . . . may bring suit on
behalf of the United States in the appropriate district court to
immediately restrain any person causing or contributing to the alleged
pollution to stop the discharge of pollutants causing or contributing

16

to such pollution or to take such other action as may be necessary.

86.     On numerous occasions in the past, untreated sewage from Defendant's collection systems has been released onto public and private property, including but not limited to streets, storm drains, yards, parks, and into buildings, including homes and businesses, where persons have or may have come into contact with such sewage.  Untreated sewage is "pollution" as that term is defined in Section 502(19) of the CWA, 33 U.S.C. § 1362(19).   Hence, Defendant's collection systems are "pollution sources" within the meaning of Section 504(a).

87.     Untreated sewage can carry bacteria, viruses, parasitic organisms, intestinal worms, and boroughs (inhaled molds and fungi).  The diseases these may cause range in severity from mild gastroenteritis (causing stomach cramps and diarrhea) to life-threatening ailments such as cholera, dysentery, infectious hepatitis, and severe gastroenteritis.  Exposure to untreated sewage, therefore, presents an "imminent and substantial endangerment to the health of persons" who may come into contact with it.  Groups facing greater risks include children, the elderly, immuno-compromised groups, and pregnant women.

88.     Upon information and belief, the release of raw sewage from Defendant's sewer systems onto public and private property will continue unless enjoined by the Court.

89.     Pursuant to Section 504(a), and in accordance with Defendant's duty to mitigate noncompliance with the NPDES permits contained in Part II.A.2 of the 1999 and 2006 permits, the United States seeks an order requiring Defendant to:  1) take measures to prevent or minimize to the greatest extent possible the release of sewage from its collection systems onto public and private property where persons may come into contact with it;  2) develop a comprehensive response plan to follow when releases of sewage and other pollutants occur from its collection systems; 3) improve public outreach and communications to notify the public about the risks associated with contacting sewage, and how to contact the City in the event of a sewage

release; and 4) take such other action as may be necessary to abate and mitigate releases of sewage from Defendant's collection systems.

**SEVENTH CLAIM FOR RELIEF**

**(Violation of the Reporting Condition (Part II.C.3) in
Defendant's NPDES Permits)**

90.     Paragraphs 1 through 45, 54 though 59, 70 through 76, and 78 through 83 are re-alleged and incorporated herein by reference.

91.     Part II.C.3. of the 1999 and 2006 NPDES permits requires, *inter alia*, that Defendant orally report within 24 hours and in writing within 5 days any noncompliance with the permits which may pose a significant danger to human health or the environment.

92.     On numerous occasions in the past, Defendant has failed to report its noncompliance with the "Proper Operation and Maintenance" condition in Part II.B.1 of the 1999 and 2006 NPDES permits for the East Plant and West Plant.

93.     For the many releases of raw sewage from Defendant's sewer collection systems evidencing a failure to comply with the Proper Operation and Maintenance condition, Defendant failed to provide notice of the discharge or release, failed to provide oral notice within 24 hours of learning of the discharge or release, failed to provide written notice within 5 days of becoming aware of the discharge or release, or provided insufficient notice that lacked one or more of the elements set forth in Part II.C.3 of the 1999 and 2006 NPDES permits.

94.     On numerous occasions since Part I.C. of Attachment A, Attachment B, and Part II.C.3 of the 2006 NPDES permits became effective and prior to that time when Part I.B of Attachment A, Attachment B, and Part II.C.3 of the 1999 NPDES permits were in effect, Defendant failed properly to report discharges from Defendant's sewer collection systems during dry weather, including discharges from CSO outfalls listed in the NPDES permits, and discharges or releases of sewage from the separate sanitary sewer system in accordance with the

18

foregoing requirements. These failures include providing no notice of the discharge or release, failing to provide oral notice within 24 hours of learning of the discharge, failing to provide written notice within 5 days of providing of becoming aware of the discharge or release, or providing insufficient notice that lacked one or more of the elements set forth in Part I.C of Attachment A, Attachment B, and Part II.C.3 of the 2006 NPDES permits, and Part I.B of Attachment A, Attachment B, and Part II.C.3 of the 1999 NPDES permits.

95.     Each of Defendant's failures to comply with the reporting requirements of Part I.C of Attachment A, Attachment B, and Part II.C.3 of its 2006 NPDES permits and Part I.B of Attachment A, Attachment B, and Part II.C.3 of the 1999 NPDES permits on each day is a separate violation of the NPDES permits and CWA Section 301, 33 U.S.C. § 1311(a).

96.     Each of Defendant's failures to comply with the reporting requirements of Part I.C of Attachment A, Attachment B and Part II.C.3 of its 2006 NPDES permits and Part I.B of Attachment A, Attachment B, and Part II.C.3 of the 1999 NPDES permits on each day is a separate violation of Ind. Code § 13-30-2-1 and 327 IAC 5-2-2.

97.     Unless enjoined by an order of the Court, Defendant will continue to violate Part I.C of Attachment A, Attachment B, and Part II.C.3 of its 2006 NPDES permits and CWA Section 301, 33 U.S.C. § 1311(a).

98.     Unless enjoined by an order of the Court, Defendant will continue to violate Part I.C of Attachment A, Attachment B, and Part II.C.3 of its 2006 NPDES permits, and in doing so, will continue to violate Ind. Code § 13-30-2-1 and 327 IAC 5-2-2.

99.     For each violation referred to in this claim, Defendant is subject to injunctive relief and civil penalties in the amounts as set forth in paragraphs 23-24, *supra.*

19

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, the United States of America respectfully prays that this Court provide the following relief:

1.     A permanent injunction directing Defendant to take all steps necessary to come into permanent and continuous compliance with all terms and conditions of its NPDES permits for the East Plant and West Plant, including but not limited to:

    a.     the conditions in Attachment A to each NPDES permit prohibiting wet weather discharges of pollutants except as authorized by each NPDES permit;

    b.     the permits' prohibition of SSOs and dry weather CSOs;

    c.     the terms and conditions that require the Defendant to maximize treatable flow to the East Plant and West Plant in order to minimize the magnitude, frequency, and duration of wet weather discharges;

    d.     the General Conditions requiring "Proper Operation and Maintenance" of its collection systems; and

    e.     the reporting requirements set forth in the NPDES Permits;

2.     Pursuant to Section 504(a), 33 U.S.C. § 1364(a), an order permanently enjoining the Defendant from causing or contributing to pollution that is presenting an imminent and substantial endangerment to the health of persons in the service area of Defendant's POTW and ordering the Defendant to take such other action as may be necessary to abate and mitigate such endangerment;

20

3.      A permanent or temporary injunction ordering the Defendant to mitigate the past environmental harm caused by its violations of the NPDES permits, Section 301(a) of the CWA, Ind. Code § 13-30-2-1, and 327 IAC 5-2-2;

4.      A judgment assessing civil penalties against Defendant and in favor of the United States, not to exceed $27,500 per day for each violation of the CWA which occurred after January 30, 1997 and on or before March 15, 2004, not to exceed $32,500 per day for each violation of the CWA which occurred after March 15, 2004 and on or before January 12, 2009, and not to exceed $37,500 per day for each violation of the CWA which occurred after January 12, 2009.

5.      A judgment assessing civil penalties against Defendant and in favor of the State, not to exceed $25,000 per day for each violation of Ind. Code 13-18-4-5 which occurred.

6.      Award the United States of America and the State of Indiana their costs and disbursements in this action; and

7.      Grant such other relief as this Court deems appropriate.

Respectfully submitted,

FOR THE UNITED STATES OF
AMERICA

Dated: _____

JOHN C. CRUDEN
Acting Assistant Attorney General
Environment and Natural Resources
    Division
U.S. Department of Justice

21

Dated: _9/10/09_

LISA A. CHERUP
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources
    Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
Phone: (202) 514-2802
Facsimile: (202) 616-6584
Email: Lisa.cherup@usdoj.gov

Dated: _9/10/09_

ANDREW C. HANSON
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources
    Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
Phone: (202) 514-9859
Facsimile: (202) 616-6584
Email: Andrew.hanson2@usdoj.gov

TIMOTHY M. MORRISON

United States Attorney

By: _____

Thomas E. Kieper
Assistant United States Attorney
Southern District of Indiana
10 West Market Street, Suite 2100
Indianapolis, IN 46204
Phone:  (317) 226-6333
Facsimile:  (317) 226-5027
Email:  Tom.Kieper@usdoj.gov

Date: 2/5/09                    By: _____

Steven D. Griffin
Deputy Attorney General
Chief, Environmental Litigation
Office of the Indiana Attorney General
302 W. Washington Street
IGCS, 5th Floor
Indianapolis, IN 46204
Phone: (317) 233-5522
Facsimile: (317) 23207979
Email:  Steven.Griffin@atg.in.gov

OF COUNSEL:
NICOLE CANTELLO
Assistant Regional Counsel
U.S. EPA Region V
77 West Jackson Blvd.
Chicago, IL
(312) 886-2870

BRIAN JOFFE
Attorney Advisor
U.S. EPA Headquarters
Ariel Rios Building (2243A)
1200 Pennsylvania Ave., N.W.
Washington, D.C.  20460
(202) 564-4026