UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, et al., ) | |
|   ) | |
|   Plaintiffs, ) | |
|   ) | |
|     vs.   ) | CAUSE NO.  3:09-cv-128-WTL-WGH |
|   ) | |
| THE CITY OF EVANSVILLE, INDIANA, et al., ) | |
|   ) | |
|   Defendants. ) | |
| _____ ) | |
|   | |
| THE CITY OF EVANSVILLE, INDIANA, et al., ) | |
|   ) | |
|   Third-Party Plaintiffs, ) | |
|   ) | |
|     vs.   ) | |
|   ) | |
| ENVIRONMENTAL MANAGEMENT CORP., ) | |
|   ) | |
|   Third-Party Defendant. ) | |

### ENTRY ON MOTION TO DISMISS

This case is before the Court on the motion (dkt. no. 149)[1] of Third-Party Defendant Environmental Management Corporation ("EMC") seeking dismissal of the indemnification claim set forth in the Count I of the second amended third-party complaint filed by Third-Party Plaintiffs The City of Evansville and Evansville Water and Sewer Utility Board (collectively referred to as

---

[1] The somewhat unusual procedural posture of this motion is as follows.  EMC originally moved to dismiss the indemnification claim contained in Evansville's first amended third-party complaint.  That motion was not considered by the Court on the merits because at that time the indemnification claim was not yet ripe and accordingly was stayed.  EMC later moved to dismiss the unstayed counts contained in Evansville's second amended complaint; that motion was denied, but the entire third-party complaint was stayed to permit resolution of all of the third-party claims at the same time.  The stay has now been lifted, and EMC for the first time moves to dismiss the indemnification claim set forth in the second amended third-party complaint.  Instead of filing a new motion to dismiss, EMC filed what it terms a supplemental brief in support of its earlier motion to dismiss; however, as Evansville acknowledges, the practical effect is the same.

"Evansville"). The motion is fully briefed and the Court, being duly advised, **DENIES** EMC's motion for the reasons set forth below.

## I. BACKGROUND

This case began as an action by the United States of America and the State of Indiana ("the Plaintiffs") against Evansville seeking injunctive relief and civil penalties for alleged violations of the Clean Water Act ("CWA"), 33 U.S.C. § 1251, *et seq.*, and Title 327 of the Indiana Administrative Code ("the Underlying Action"). Specifically, the Plaintiffs alleged that the City failed to comply with the terms of various National Pollutant Discharge Elimination System ("NPDES") permits it had been issued by the Indiana Department of Environmental Management ("IDEM"). The amended complaint asserted that Evansville's wastewater and sewer system was poorly maintained, poorly operated, and of insufficient capacity, and as a result the system failed to collect and treat all wastewater, allowing untreated sewage and other harmful pollutants to be discharged into various waters that flow in and around Evansville. Evansville, in turn, filed a third-party complaint against EMC alleging that it had contracted with EMC to operate the wastewater and sewer system and that pursuant to the contract EMC was liable for any compliance failures or other violations that may have occurred on its watch.

In Count I of Evansville's second amended third-party complaint, Evansville alleged that EMC was required to indemnify it for "the full amount of any liability [Evansville] might in incur in connection with the Underlying Action." As mentioned above, that claim was stayed because at the time it was filed the Underlying Action had not been resolved. The Plaintiffs and Evansville have now resolved the Underlying Action by entering into a consent decree, and Evansville alleges that EMC is obligated to indemnify it for the $490,000 in civil penalties it agreed to pay in settlement of the Plaintiffs' claims against it.

## II.  DISCUSSION

Evansville's allegation with regard to Count I of its second amended third-party complaint is based upon the following provision (hereinafter referred to as "the Provision") contained in the contract between EMC and Evansville:

> **Fines and Other Costs.**  EMC shall be responsible and liable for penalties, fines, damages, or cleanup expenses that may be imposed by the USEPA, ORSANCO, IDEM, or any other regulatory agency for any noncompliance with or violation of any permit, regulation, or standard including cleanup expenses.  See also Attachment 3 for limitation of EMC's liabilities.  **EMC shall be responsible for the cost of damages caused by poor judgement [sic] of EMC supervision.**

In the instant motion, EMC argues that Count I fails to state a claim upon which relief can be granted because (1) the Provision is not an enforceable indemnity provision; and (2) even if it were, it does not apply to the civil penalties set forth in the consent decree because they were voluntarily agreed to by Evansville rather than "imposed" by the EPA and IDEM.

With regard to the first argument, EMC summarizes its argument as follows:

> Indemnity agreements will only be enforced if the intent to create an indemnity obligation is set forth in clear and unequivocal terms.  The paragraph relied upon by [Evansville] for its indemnification claim fails to set forth an intent that EMC indemnify the City.  In fact, it can just as easily be construed as a promise by EMC to pay a regulatory agency for any fines or damages that are imposed by that agency on EMC.

EMC Brief at 4.  EMC's general statement of Indiana law is correct; as the cases cited by EMC demonstrate, "indemnification clauses are strictly construed and the intent to indemnify must be stated in clear and unequivocal terms."  *Fresh Cut, Inc. v. Fazli*, 650 N.E.2d 1126, 1132 (Ind. 1995).[2]  However, EMC's suggestion that an agreement to indemnify must be signified by the

---

[2]The Court notes with some dismay that while EMC asserts in its reply brief that clauses "similar" to the one at issue in this case, "providing no mention of indemnification, have been determined to be insufficient to create an indemnity obligation under Indiana law," EMC Reply at 8, the cases cited by EMC for this assertion, *Fazli*, 650 N.E.2d at 1132, and *State v. Thompson*, 385 N.E.2d 198, 215-17 (Ind. App. 1979), clearly do not support EMC's position.  *Fazli* did not involve a purported indemnification clause at all, but rather the assertion of a contractual

inclusion of words such as "indemnification, reimbursement, or an agreement to hold harmless" in order to be "clear and unequivocal" finds no support in any of the cases cited by EMC. The question is not whether certain magic words are contained in the Provision, but rather whether the Provision clearly and unequivocally establishes that the parties intended for EMC, rather than Evansville, to be responsible for the civil penalties at issue in this case.[3] EMC puts forth several reasons why it believes it does not.

      First, EMC points to another provision in the contract between it and Evansville which expressly provides that EMC will not be responsible for costs attributable to the negligence of Evansville. EMC argues that this language is irreconcilable with Evansville's claim that the Provision creates an indemnification obligation. In fact, however, the two contractual provisions are easily reconciled. The Provision establishes EMC's liability for penalties, fines, etc., for which EMC is responsible, whether they are levied against EMC directly by a governmental agency (in which case, obviously, no contractual provision would be necessary to establish EMC's liability

---

obligation that the court noted "resemble[d] indemnification." More importantly, however, the court did *not*, as EMC asserts, hold that the clause at issue was "insufficient to create an indemnity obligation under Indiana law"; rather, it held that there were issues of material fact with regard to whether the obligation in question was created by the contract. Thus, the Indiana Supreme Court's analysis of what EMC terms a "similar" situation actually supports Evansville's position that dismissal is not appropriate. *Thompson* is equally unhelpful to EMC on this issue, as it dealt with the question of whether a contractual provision clearly and unequivocally provided for indemnification by the indemnitor for the indemnitee's own negligence. The court in *Thompson* did not address whether the contract language at issue was sufficient to create an indemnification obligation for damages or injuries caused by the indemnitor.

    [3]EMC argues that "the Court does not need to determine that precise meaning of the paragraph in order to dismiss Count I because the provision does not 'clearly and unequivocally' manifest an intent to create an indemnity obligation upon EMC to fully fund the City's costly obligations to rebuild its sewer infrastructure." EMC Brief at 8. This argument is curious, inasmuch as Count I clearly seeks indemnification for all amounts paid by Evansville to the Plaintiffs, which unequivocally includes amounts denominated as civil penalties; accordingly, a finding by the Court that the provision did not cover rebuilding costs would not dictate dismissal of the entire claim. In fact, in its response to the instant motion, Evansville now argues that EMC is obligated only to indemnify it for the civil penalties portion of the settlement, so the Court need not determine whether the Provision applies to any other portion of the settlement.

4

for them) or whether they are levied against Evansville (because Evansville remains ultimately responsible to the government for compliance under the applicable environmental laws).  On the other hand, the provision pointed to by EMC makes clear that the Provision is not intended to require EMC to indemnify Evansville for Evansville's own negligence.[4]

 EMC's next argument is based upon the fact that there is a clause in the contract that provides that Evansville will "indemnify, hold harmless, reimburse and defend EMC" for fines, penalties, etc., "arising out of the presence of any hazardous, toxic or radioactive substance at or on the Facilities prior to the Effective Date of this Agreement."  EMC argues that because the parties used the phrase "indemnify, hold harmless, reimburse and defend" in this provision, it follows that the parties would have used the same phrase in any other indemnification provision in the contract.  Therefore, EMC argues, because the Provision does not contain that phrase it is not an indemnification provision.  While EMC is correct that a contract is to be construed as a whole, it does not follow that there is only one correct way to convey an indemnification obligation.  Again, the question is not whether the Provision contains any particular words, but rather what the words used in the Provision mean.

 EMC next argues that even if the Provision was intended to create some sort of indemnification obligation, that obligation does not apply to the civil penalties paid by Evansville in this case because they were not "imposed" by a regulatory agency, but were rather paid "voluntarily" by Evansville to settle a lawsuit against it.  "It is clear, however, that an indemnitee's

---

[4] Agreements to indemnify a party for the party's own negligence are not the norm and therefore the intent to create such an agreement must be stated in clear and unequivocal terms. *Henthrone v. Legacy Healthcare, Inc.,* 764 N.E.2d 751, 757 (Ind. App. 2002).  Because the Provision does not clearly and unequivocally provide that EMC shall indemnify the City for fines and penalties caused by the City's negligence, it does not create such an obligation. Instead, the Provision creates the unextraordinary requirement that EMC indemnify the City for fines and penalties for which EMC, rather than the City, is responsible.

decision not to proceed to judgment provides no basis for an indemnitor's assertion that a settlement is a voluntary payment." *Sequa Coatings Corp. v. Northern Indiana Commuter Transp. Dist.*, 796 N.E.2d 1216, 1229 (Ind. App.2003). EMC's argument that the civil penalties at issue were not imposed by "a regulatory agency" because the Plaintiffs chose to file a civil action rather than assess an administrative penalty is similarly unavailing. Under Indiana law, a court is to "construe an indemnity agreement to cover all losses and damages to which it reasonably appears the parties intended it to apply." *Henthorne v. Legacy Healthcare, Inc.*, 764 N.E.2d 751, 756 (Ind. App. 2002). Nothing in the Provision limits its application to "a standard type of fine imposed by a regulatory agency for a clear violation of a permit, regulation, or effluent standard" as EMC argues. EMC Reply at 5-6. Rather, the plain language of the Provision makes EMC responsible for "penalties . . . imposed by [the Plaintiffs] for *any* noncompliance with or violation of any permit, regulation or standard" (emphasis added). The Clean Water Act gave the Plaintiffs different paths by which they may seek to impose penalties on Evansville; nothing in the language of the Provision or the contract as a whole suggests that EMC's obligation with regard to those penalties depended upon which path the Plaintiffs chose.[5]

---

[5]EMC also points to the fact that the Provision does not contain the words "strict liability" and argues that the "rule laid down in" *Price v. Amoco Oil Co.*, 524 F. Supp. 364 (S.D. Inc. 1981), "is that a court will only enforce an indemnification agreement purporting to indemnify the indemnitee for the indemnitee's strict liability if it contains an 'explicit reference to strict liability.'" As is virtually always the case when a federal district court is ruling on a motion for summary judgment, especially when issues of state law are involved, the court in *Price* did not purport to establish any broad principle of law, but rather simply resolved the case before it. And because the facts of *Price* are not remotely analogous to the facts of this case (as EMC itself implicitly recognizes), the court's holding in that case is not helpful to this Court. More importantly, however, EMC's reliance on *Price* ignores the fact that Evansville is only seeking "reimbursement for fines, penalties and similar sanctions imposed on the City *for violations for which EMC is responsible*." Second Amended Third-Party Complaint at 8 (emphasis added). Therefore, the principle for which EMC cites *Price*, that "[a]ssuming all of another's legal liability without regard legal or factual responsibility is an awesome burden," EMC Reply at 15 n.17, is irrelevant to the issues in this case.

### III. CONCLUSION

The issue before the Court is whether Evansville's second amended third-party complaint states a claim upon which relief may be granted.  Evansville alleges that EMC assumed full functional control over the operation and maintenance of its sewer system, that EMC failed to operate and maintain the system in accordance with the parties' contract, and that as a result the Plaintiffs filed suit against Evansville and Evansville paid civil penalties in order to settle that suit. These facts–which must be taken as true for purposes of resolving the instant motion–clearly are sufficient to state a claim for indemnification under the Provision.  Accordingly, EMC's motion to dismiss is **DENIED**.

SO ORDERED:  11/04/2011

_William T Lawrence_

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification